UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| ESSEX INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 06-CV-2035 |
| ) | |
| SOY CITY SOCK COMPANY, ) | |
| WILLIAM E. PHILLIPS COMPANY, ) | |
| INC. and FEDERAL INSURANCE ) | |
| COMPANY, ) | |
| Defendants. ) | |

**OPINION**

This case is before the court for ruling on the Motion for Summary Judgment (#19) filed by Plaintiff, Essex Insurance Company (Essex). Following this court's careful consideration of the arguments of the parties and the documents provided by the parties, this court agrees with Essex that the insurance policy it issued to Soy City Sock Company (Soy City) does not provide coverage for the claims included in the underlying lawsuit. Accordingly, Essex's Motion for Summary Judgment (#19) is GRANTED.

FACTS

During the early morning hours of October 5, 2003, a fire occurred at a warehouse owned and operated by Soy City. At the time of the fire, property belonging to William E. Phillips Company (Phillips) was stored in the warehouse and was destroyed. On October 13, 2005, Federal Insurance Company (Federal), as Phillips' subrogee, filed a Complaint against Soy City in this court as Case No. 05-CV-2229.[1] The case was assigned to United Stated District Court Judge Harold A.

---

[1] This court's jurisdiction is based upon diversity of citizenship. The Complaint alleged that Federal is an Indiana corporation, with its principal place of business in New Jersey, and Soy City is an Illinois company with its principal place of business in Decatur, Illinois. The Complaint further alleged that the amount in controversy exceeded $75,000.00.

Baker. In its Complaint, Federal alleged that Phillips was engaged in the business of manufacturing materials used to clean up oil spills. Federal also alleged that, pursuant to a written and/or oral contract, Soy City was "required to store, package and ship" Phillips' product. Federal alleged that Phillips sustained damages when the fire at Soy City's warehouse destroyed Phillips' product. Federal alleged that it insured Phillips pursuant to a policy of insurance and reimbursed Phillips for the fair and reasonable value of its damaged property in an amount in excess of $550,000.00.

Federal alleged, in Count I, that Soy City was liable for negligence. Federal alleged that Soy City "had a duty to perform its activities in a good, safe and workmanlike manner, so as to avoid damaging" Phillips' product. Federal alleged that Soy City, through its employees or representatives, breached its duty in one or more of the following ways:

> a) failing to adequately protect the property housed in the warehouse, even after Defendant received threats targeting the warehouse;
>
> b) failing to properly close and/or secure all entrances to the warehouse, so as to prevent trespassers from entering;
>
> c) failing to properly monitor the warehouse;
>
> c) failing to warn the Phillips Company of the threats made against Defendant regarding the warehouse;[2]
>
> d) failing to properly train and/or supervise its employees and/or workmen in the proper procedure for securing the building after hours;
>
> e) failing to comply with all applicable codes, standards and other

---

[2] The Complaint includes two subsections designated as "c)".

    industry guidelines; and

    f) otherwise failing to exercise due care under the circumstances.

In Count II, Federal alleged breach of contract by Soy City. Federal alleged that, pursuant to its agreement with Phillips "Soy City became contractually obligated to store, package and ship the Phillips Company's product in merchantable form." In Count III, Federal alleged breach of warranties. In Count IV, Federal alleged that Soy City "was to serve as a bailee for the materials manufactured by the Phillips Company, with Soy City responsible for storing, packaging and shipping the materials pursuant to the Phillips Company's instructions in exchange for fair and reasonable consideration." Federal alleged that Phillips delivered the materials to Soy City in good condition and "Soy City accepted all of the materials, and took exclusive possession of the materials pursuant to the aforementioned agreement of bailment." Federal therefore alleged that Soy City was liable under a theory of bailment. In all four Counts of the Complaint, Federal sought a judgment against Soy City in an amount in excess of $550,000.00.

  On February 15, 2006, Essex filed its Complaint for Declaratory Judgment and other relief (#1) in this case against Soy City, Phillips and Federal.[3] Essex stated that it issued a commercial general liability policy to Soy City for the period of March 6, 2003 to March 6, 2004. Essex stated that it was seeking a declaration from this court that it owes no duty to defend or indemnify Soy City with respect to claims for property damage and owes no duty to defend Soy City with respect to the underlying action filed by Federal. Essex stated that the policy issued to Soy City included an exclusion for "property damage" to "[p]ersonal property in the care, custody or control of the

---

[3] This court's jurisdiction is based upon diversity of citizenship. Essex alleged that it is organized under the laws of Delaware and has its principal place of business in Virginia. Phillips, like Soy City, is a citizen of Illinois, and, as noted previously, Federal is a citizen of Indiana and New Jersey. There is no dispute that the amount in controversy exceeds $75,000.00.

insured[.]" Essex stated that the policy also included an endorsement which stated that the policy did not "apply to claims for breach of contract." Essex further stated that the policy provided that "[w]here there is no coverage under this policy, there is no duty to defend."

Essex further stated that, on November 18, 2005, Soy City, through its counsel, tendered the defense of the underlying action to Essex. Essex stated that it then began an investigation into the claim. Essex stated that, pursuant to the agreement referenced in the underlying action, Soy City stored Phillips' product in sixty inch wide master rolls at the Soy City warehouse. Essex stated that Soy City's employees would then cut the raw material down to squares to fill orders of Phillips' customers and ship the product to the intended Phillips' customer. Essex stated that the fire which allegedly destroyed Phillips' property was deemed to be arson by the local authorities. Essex further stated that, at the time of the fire and immediately preceding the fire, there were no employees or staff from Phillips at the Soy City warehouse. Essex stated that, "[a]t all relevant times, Soy City employees performed the storage, the packaging, and shipping of Phillips' products." Essex alleged that it has no duty to defend or indemnify Soy City against the underlying action because Phillips' products were "in Soy City's exclusive care, custody or control" so that the damage to the products was excluded from coverage under the terms of the policy. Essex also alleged that the claims for breach of contract are specifically excluded by the breach of contract endorsement to the policy. Essex asked this court to enter a judgment declaring that Essex does not have any obligations to Soy City based upon the terms of the insurance policy. Essex attached a copy of the policy and a copy of the underlying action brought by Federal.

On October 23, 2006, Judge Baker entered an Order in the underlying action, Case No. 05-2229, which consolidated the two cases and reassigned Case No. 05-2229 to this court. On

4

November 1, 2006, Federal and Soy City filed a Joint Motion to Stay Proceedings in Case No. 05-2229. The parties stated that Soy City had tendered the defense of the action to Essex but that Essex had denied coverage and had filed a declaratory judgment action seeking a determination as to whether the loss was covered by the policy issued to Soy City. The parties further stated that, without insurance coverage, it appeared that Soy City would not be in a position to satisfy any judgment against it in Case No. 05-2229. Therefore, the parties requested that the case be stayed until the declaratory judgment action had been resolved. On November 8, 2006, Magistrate Judge David G. Bernthal entered an order granting the Motion to Stay. Also on November 8, 2006, this court entered an order which vacated the order consolidating the two cases, stating that there was no need for the cases to be consolidated.

In this case, the parties conducted limited written discovery related to the issue of insurance coverage for the underlying action. On May 8, 2007, Essex filed its Motion for Summary Judgment (#19). Essex also filed exhibits in support of its Motion, including a copy of the insurance policy and Soy City's Answers to Interrogatories. On June 7, 2007, Phillips and Federal filed their Response to Essex's Motion for Summary Judgment (#21) with attached exhibits, including the affidavit of Hugh Brooks, president of Phillips. On June 13, 2007, Soy City filed its Response to Essex's Motion for Summary Judgment (#22), and, on June 18, 2007, Essex filed its Reply (#23).

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

5

of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). The interpretation of an unambiguous contract is a question of law, and therefore a dispute over the terms of an unambiguous contract is suited to disposition on summary judgment. Utility Audit, Inc. v. Horace Mann Serv. Corp., 383 F.3d 683, 687 (7th Cir. 2004). Under Illinois law, the construction of an insurance policy and a determination of the rights and obligations under the policy are questions of law which are appropriate for resolution by summary judgment. Crum & Forster Managers Corp. v. Resolution Trust Corp., 620 N.E.2d 1073, 1077 (Ill. 1993); Hartford Fire Ins. Co. v. Everest Indem. Ins. Co., 861 N.E.2d 306, 310 (Ill. App. Ct. 2006), app. denied, 865 N.E.2d 968 (Ill. 2007); see also Cincinnati Ins. Co. v. Allen, 347 F. Supp. 2d 586, 590 (C.D. Ill. 2004).[4]

Summary judgment is not warranted, however, when there are genuine issues of material fact with respect to the interpretation of a contract. Cherry v. Auburn Gear, Inc., 441 F.3d 476, 481 (7th Cir. 2006). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the evidence is viewed and all inferences are drawn in favor of the nonmoving party. Anderson, 477 U.S. at 255. However, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248.

## II. ESSEX'S MOTION FOR SUMMARY JUDGMENT

Essex argues that it is entitled to summary judgment on its Complaint requesting a

---

[4] The parties do not dispute that Illinois law applies in this diversity action.

declaratory judgment. Essex contends that the liability insurance policy at issue in this case does not provide coverage to Soy City because the "care, custody or control" exclusion within the policy acts as a complete bar to coverage.

Under Illinois law, it is well settled that an "insurer's duty to defend its insured is much broader than its duty to indemnify." Outboard Marine Corp. v. Liberty Mut. Ins. Co., 607 N.E.2d 1204, 1220 (Ill. 1992); see also Hartford Fire Ins. Co., 861 N.E.2d at 310. To "determine whether an insurer has a duty to defend its insured, 'the court must look to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy.'" Native Am. Arts, Inc. v. Hartford Cas. Ins. Co., 435 F.3d 729, 732 (7th Cir. 2006), quoting Crum & Forster, 620 N.E.2d at 1079. If the facts alleged in the underlying complaint fall within, or even potentially within, the coverage provisions of the policy, the insurer must defend the insured. Native Am. Arts, Inc., 435 F.3d at 732. In assessing whether this duty exists, a court must construe the allegations in the underlying complaint liberally and any doubt in coverage must be resolved in favor of the insured. Native Am. Arts, Inc., 435 F.3d at 732. "Nonetheless, deference only goes so far; if the policy terms are unambiguous, the court must apply their plain and ordinary meaning." Native Am. Arts, Inc., 435 F.3d at 732, citing Crum & Forster, 620 N.E.2d at 1078. Therefore, an "insurer has no duty to defend where it is 'clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.'" Native Am. Arts, Inc., 435 F.3d at 734, quoting U.S. Fid. & Guar. Co. v. Wilkin Insulation Co., 578 N.E.2d 926, 930 (Ill. 1991).

In construing an insurance policy, the primary function of the court is to ascertain and enforce the intentions of the parties as expressed in the agreement. Crum & Forster, 620 N.E.2d at

1078.  "To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract."  Crum & Forster, 620 N.E.2d at 1078; see also Liberty Mut. Ins. Co. v. Am. Home Assurance Co., 858 N.E.2d 530, 536-37 (Ill. App. Ct. 2006). If the words used in the policy are plain and unambiguous, the court will afford them their plain and ordinary meaning and will apply them as written.  Crum & Forster, 620 N.E.2d at 1078; see also Sokol & Co. v. Atl. Mut. Ins. Co., 430 F.3d 417, 420 (7th Cir. 2005).

It is the burden of the insurer to show that a claim falls within a provision that limits or excludes coverage.  Pekin Ins. Co. v. L.J. Shaw & Co., 684 N.E.2d 853, 855 (Ill. App. Ct. 1997). In this case, Essex argues that the "care, custody or control" exclusion in the policy unambiguously precludes coverage for any claims related to the loss of Phillips' product in the warehouse fire. Under Illinois law, the "care, custody or control" exclusion precludes insurance coverage if a "two-pronged test" is met: (1) the property was "within the possessory control of the insured at the time of the loss"; and (2) the property was "a necessary element of the work performed [by the insured]." Essex Ins. Co. v. Wright, 862 N.E.2d 1194, 1197 (Ill. App. Ct. 2007), quoting Caisson Corp. v. Home Indem. Corp., 502 N.E.2d 1168, 1169-70 (Ill. App. Ct. 1986); see also Bolanowski v. McKinney, 581 N.E.2d 345, 348 (Ill. App. Ct. 1991).  Essex argues that the allegations included in the underlying action satisfy both of these criteria.  Essex argues that the property was in the possessory control of Soy City at the time of the loss because it was stored for processing by Soy City employees at the Soy City warehouse.  Essex argues that the second prong is also satisfied because Phillips' property stored at the Soy City warehouse was a necessary element of the work.

Essex notes that the underlying action alleges that the contract between Phillips and Soy City required Soy City to "store, package and ship" Phillips' product from its warehouse to Phillips' customers and argues that the Phillips property left with Soy City was the very subject matter of the work.

In their Responses, Phillips, Federal and Soy City argue that there are disputes of fact so that a determination that the "care, custody or control" exclusion applies cannot be made at this stage of the proceedings. They argue that it is not significant that no Phillips' employees were at the warehouse at the time of the fire because, as the fire occurred during the early morning hours, no employees of either Soy City or Phillips were present. They also argue that they dispute Essex's assertion that Phillips' employees made only "occasional" visits to the Soy City operation. They point out that the written discovery shows that at least three employees of Phillips were present at the Soy City premises within 10 days of the fire.[5] They also point out that Hugh Brooks, Phillips' president, stated in his affidavit that the product or property Phillips had at the Soy City warehouse was only there on a temporary basis. Brooks stated that the "product shipped from our various suppliers to the warehouse where it was processed in response to our customers' orders." He stated that, typically, "the orders were processed and our product shipped from the warehouse to our customers within two weeks." Brooks further stated that Phillips' "product rarely remained at the warehouse for longer than 30 days."

Phillips and Federal argue that "in the case at bar, there is no testimony or indication in the complaint as to the access Phillips Company had to its product while it was at the Soy City warehouse or how long the property was on the premises." They argue that an insured does not have

---

[5] Essex has noted that the response does not provide any information regarding whether the three employees of Phillips were present before or after the fire.

9

"care, custody or control" of another's property when the insured has "temporary or incidental access to the property or limited possession of an area of the property," citing Bolanowski, 581 N.E.2d at 348. They therefore argue that "there is a material issue of fact with regard to whether the property was in the possessory control of Soy City at the time of the fire." Phillips and Federal contend that Phillips' access to the property and whether or not the property was in the insured's possession for a temporary period of time at the Soy City warehouse are matters for further discovery or trial. Soy City additionally argues that the "purpose of the [insurance] contract was to insure the contents of the warehouse against precisely the type of accident that occurred."

This court concludes that the case law does not support the position of Phillips, Federal and Soy City. This court notes that, in opposing summary judgment, they have not specifically argued that the property was not a necessary element of the work performed. Their arguments have focused on the issue of whether the property damaged was in Soy City's "possessory control." They seem to believe that Soy City would not have "possessory control" if Phillips had access to the property and if the property was only in Soy City's possession for a relatively short period. This court does not agree. Illinois courts have said that "[w]hile the control exercised by the insured must be exclusive, it need not be continuous, and if the insured has possessory control at the time the property is damaged, the exclusion clause will apply." Wright, 862 N.E.2d at 1197, quoting Country Mut. Ins. Co. v. Waldman Mercantile Co., 430 N.E.2d 606, 609 (Ill. App. Ct. 1981). Applying Illinois law, the Seventh Circuit Court of Appeals concluded that exclusivity of possession may exist even if the possession is of short duration. See Stewart Warner Corp. v. Burns Int'l Sec. Servs., Inc., 527 F.2d 1025, 1029 (7th Cir. 1975). Further, the fact that the owner of the property also had access to the property does not preclude a finding of "possessory control." See Country Mut. Ins. Co., 430

N.E.2d at 608-09 (owner and operator of discount store had possessory control of lessees' merchandise located in the store even though the lessees' employees came to the store once or twice a week and were responsible for taking inventory and restocking the merchandise). Illinois courts have stated that the inquiry into whether an insured had exclusive possessory control involves such factors as who "supervised" the operation in which the property was damaged and who had control of the property at the time of the damage. See Caisson Corp., 503 N.E.2d at 1170; see also Country Mut. Ins. Co., 430 N.E.2d at 609. The inquiry also involves a consideration of who "exercised the right of access to . . . maintain, move, or protect" the property. See Bolanowski, 581 N.E.2d at 349.

In this case, Federal specifically alleged in the underlying action that it was Soy City who stored, packed and shipped Phillips' product. Federal further alleged various actions Soy City failed to take to protect Phillips' property. The allegations of the underlying complaint show that Soy City supervised the operation, had control of the property at the time of the damage and had access to maintain, move, and protect the property. This court therefore agrees with Essex that Soy City had possessory control at the time of the loss. In fact, in the underlying action, Federal alleged that Soy City "accepted all of the materials, and took exclusive possession of the materials." This court concludes that the allegations at issue in this case are easily distinguishable from the allegations in Bolanowski, the case relied upon by the defendants. In Bolanowski, the underlying action alleged that the plaintiffs had entered into a contract to provide musical entertainment at a lounge. It was further alleged that, at some point while the plaintiffs were performing at the lounge, someone suggested that the plaintiffs' musical equipment be left in the bar between shows. Thereafter, the plaintiffs' equipment was left at the lounge while not in use. The establishment and the plaintiffs' equipment were subsequently destroyed by fire. The plaintiffs sought damages from the defendants,

11

who operated the lounge. The defendants sought coverage from their insurance company. The court in Bolanowski determined that it was not clear from the face of the underlying complaint that the allegations stated facts which fell within the exclusion for damage to property within the "care, custody, or control" of the defendants. Bolanowski, 581 N.E.2d at 348. The court first recognized that a "'care, custody, or control' exclusion is not uncommon in liability insurance policies such as that at issue herein." Bolanowski, 581 N.E.2d at 348. The court then concluded that the underlying complaint did not indicate that the defendants had any type of possessory control over the musical equipment but merely alleged that the plaintiffs' equipment was left on the defendants' premises between shows. Bolanowski, 581 N.E.2d at 349. The court stated that, "[a]bsent allegations showing that defendants were accorded the right or duty to exercise some type of possessory control over the equipment, we must conclude that the record does not clearly show that defendants had 'care, custody, or control' over plaintiffs' equipment at the time of the fire." Bolanowski, 581 N.E.2d at 349.

In this case, by contrast, the allegations in the underlying action specifically state that Soy City stored, packed and shipped Phillips' product and "took exclusive possession of the materials." Based on these allegations, it is clear that Soy City had possessory control over Phillips' product at the time of the loss. It is also undisputed that Phillips' product was a necessary element of the work performed by Soy City. Therefore, this court concludes that both prongs of the applicable test have been met. Because of this conclusion, any factual issue regarding Phillips' access to the property in Soy City's warehouse or the length of time Phillips' product remained at the warehouse simply is not material to the issue before this court.

As far as Soy City's argument that the "purpose of the [insurance] contract was to insure the

contents of the warehouse against precisely the type of accident that occurred," this court cannot agree. The Seventh Circuit has stated that one of the purposes of the "care, custody or control" exclusion:

> is to prevent the general liability insurer from becoming a guarantor of the insured's workmanship in his ordinary operations. Failures of workmanship are a normal business risk which the insured is in the best position to prevent. If such risk be transferred to the insurer via general liability provisions, the cost of general liability coverage will be greater. The "care custody or control" exclusion is designed to avoid such result.

Stewart Warner Corp., 527 F.2d at 1030; see also Ins. Co. of N. Am. v. Adkisson, 459 N.E.2d 310, 312 (Ill. App. Ct. 1084). Therefore, the Seventh Circuit concluded that the exclusion applied where the insured was supplying security services and "the core of [its] workmanship is to provide a trustworthy and capable watchman to care for the premises and their contents." Stewart Warner Corp., 527 F.2d at 1030. The court stated that, "[i]f the 'care, custody or control' exclusion does not apply to such contents, the general liability insurer would bear the burden of guaranteeing such workmanship" so that the "general principles support exclusion in this case." Stewart Warner Corp., 527 F.2d at 1030. It is only "where the insured might not be in the 'best position to prevent' the property damage–that is, does not yield exclusive possessory control of the property" that the exclusion should not apply. Scottsdale Ins. Co. v. Starks Bros. Moving & Hauling Co., 1995 WL 642830, at *4 (N.D. Ill. 1995) (emphasis in original).

In this case, the allegations of Federal's complaint show that Soy City had control of

Phillips' property in its warehouse and was in the "best position to prevent" the property damage. Therefore, this court cannot agree with Soy City's argument that the purpose of the policy issued by Essex was to provide coverage for this type of loss. Providing coverage for the destruction of the product would require guaranteeing Soy City's workmanship, which the exclusion is designed to avoid.

In fact, other courts have found that the exclusion applies in situations similar to the facts of the case at hand. In Country Mut. Ins. Co., a fire destroyed a discount store and the merchandise inside. Some of the merchandise was owned by tenants who leased space in the discount store. Country Mut. Ins. Co., 430 N.E.2d at 608. The Illinois appellate court found that the discount store had "exclusive possessory control of the lessees' property at the time of the loss." Country Mut. Ins. Co., 430 N.E.2d at 609. The court therefore concluded that the "care, custody or control" exclusion included in the insurance policy issued to the owner of the discount store applied so that there was no coverage for damage to the tenant's merchandise. Country Mut. Ins. Co., 430 N.E.2d at 609-10. In Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc., 82 S.W.3d 869 (Ky. 2002), the Supreme Court of Kentucky held that the exclusion applied so there was no coverage for bourbon whiskey destroyed in a warehouse fire. In that case, the whiskey had been sold to various customers and the warehouse owner was storing it while it aged, prior to bottling. Kemper Nat'l Ins. Cos., 82 S.W.2d at 871. The Court stated that the warehouse owner stored the bourbon in its warehouses, which were located on its premises and controlled by its employees, so the bourbon was in its "care, custody or control." Kemper Nat'l Ins. Cos., 82 S.W.2d at 873; see also Tuthill Energy Sys. v. Employers Ins. of Wausau, 2004 WL 549808 (Ohio Ct. App. 2004) (exclusion applied so there was no coverage under excess insurance policy issued to warehouse owner where warehouse fire destroyed molds,

dies and patterns owned by various customers but stored together at warehouse).

Based upon the cases cited, this court concludes that, contrary to Soy City's argument, the insurance policy issued by Essex to Soy City was written to exclude coverage for this type of loss. This court recognizes that when an insurer "seeks to avoid coverage based on an exclusionary provision in the policy, the applicability of the exclusionary clause must be clear and free from doubt." Bituminous Cas. Corp. v. Fulkerson, 571 N.E.2d 256, 262 (Ill. App. Ct. 1991). In addition, "[p]rovisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer." Am. Nat'l Fire Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 796 N.E.2d 1133, 1142 (Ill. App. Ct. 2003), citing Am. States Ins. Co. v. Koloms, 687 N.E.2d 72, 75 (Ill. 1997). However, when a clear and unambiguous exclusion places a valid limitation on policy coverage, the plain language of the exclusion must be enforced by the courts. See Native Am. Arts, Inc., 435 F.3d at 733; Pekin Ins. Co., 684 N.E.2d at 859; see also State Farm Fire & Cas. Co. v. Hatherly, 621 N.E.2d 39, 42 (Ill. App. Ct. 1993). In this case, this court concludes that the exclusion clearly applies.

Following this court's careful review, this court concludes that it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. Based upon the allegations of the underlying complaint, the property at issue was under the care, custody or control of Soy City. Therefore, the exclusion clause of the policy is applicable and Phillips, Federal and Soy City have not shown that there is a genuine issue as to any material fact.

IT IS THEREFORE ORDERED THAT:

(1) Essex's Motion for Summary Judgment (#19) is GRANTED.

15

(2) Judgment is entered in favor of Essex and against Soy City, Phillips and Federal. This court enters a declaratory judgment that there is no coverage under the Essex policy with respect to the underlying lawsuit, Case No. 05-2229.

(3) This case is terminated. Because this case has been resolved, a text order will be entered in Case No. 05-2229 lifting the stay and setting the case for a telephone status conference.

ENTERED this  24th  day of August, 2007

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE